UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK E MAJOR,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 15-cv-03426-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 106 |

On July 24, 2015, Plaintiff Mark E. Major brought the instant case, alleging that he was the target of a "campaign of retribution." (Compl. ¶ 1, Dkt. No. 1.) Pending before the Court is Defendants' motion to dismiss Plaintiff's fourth amended complaint with prejudice. (Defs.' Mot., Dkt. No. 113.) The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b) and vacates the hearing set for September 21, 2017. Upon review of the parties' filings, the Court GRANTS Defendants' motion to dismiss with prejudice.

## I. BACKGROUND

### A. Factual Background

Plaintiff is an openly gay man. (Fourth Amended Compl. ("FAC") ¶ 11, Dkt. No. 101.) Plaintiff alleges that since January 2013, he has been the victim of "abusive involuntary psychological and physical coercion," due to his sexual orientation. (FAC ¶¶ 17, 19.) On January 13, 2013, six San Francisco Police Department ("SFPD") officers arrived at 120 Hartford Street. (FAC ¶¶ 64, 66.) While Sergeant Ian Furminger and others socialized with Mr. Bob Quinn, Plaintiff was subjected to intimidation and told he was no longer welcome on the property. (FAC ¶ 37.) An hour or so later, SFPD officers and caseworkers Alta Monroe and Patrick Quinn entered, surprising Plaintiff, and allegedly pressured Plaintiff for an interview. (FAC ¶ 68.)

United States District Court
Northern District of California

1 Plaintiff declined an offer of services.  (FAC ¶ 68.)

2 On December 31, 2013, Plaintiff complained of stalking in San Jose.  (FAC ¶ 141.)  On March 13, 2014, Plaintiff complained of stalking in Berkeley.  (FAC ¶ 142.)  Plaintiff also asserts he was stalked in the San Francisco Public Library.  (FAC ¶ 143.)  Plaintiff alleges that he has been subjected to stalking by Defendants, and "targeted with infrared and other private or City surveillance resources."  (FAC ¶¶ 55, 58.)

On March 28, 2014, Plaintiff discovered medical records with erroneously diagnosed him as psychotic.  (FAC ¶¶ 45, 70.)  One of the records stated that there was "verbal consent" to intervention, but no consent had actually been obtained.  (FAC ¶ 71.)  Plaintiff believes these records "infer an express or tacit agreement between . . . the two Quinn's," presumably Mr. Bob Quinn and Mr. Patrick Quinn.  (FAC ¶ 72.)

On April 2, 2014, Ms. Nancy Sarieh responded to Plaintiff's inquiry and explained that Plaintiff gave verbal consent by agreeing to speak with the caseworkers.  (FAC ¶ 122.)  That same day, Plaintiff requested that the records be corrected.  (FAC ¶ 123; Exh. 6.)  On April 11, 2014, Dr. David Pine responded; Plaintiff alleges that the response involved misrepresentations and false or misleading statements.  (FAC ¶¶ 98, 124; Exh. 7.)  On April 14, 2014, Plaintiff sent a complaint to Director of Public Health Barbara Garcia.  (FAC ¶ 125.)  Plaintiff's mother also sent Ms. Garcia an e-mail regarding the complaint.  (FAC ¶ 126.)  On May 5, 2014, Dr. Melissa Bloom informed Plaintiff that following an investigation, there was no merit to Plaintiff's April 2, 2014 grievance and there had been no inappropriate access to Plaintiff's medical files.  (FAC, Exh. 9.)  To the extent Plaintiff wanted to amend health information, Dr. Bloom recommended that Plaintiff complete the form provided by Dr. Pine.  On June 14, 2014, Plaintiff responded to Dr. Pine's letter, copies of which were provided to Director Garcia, City Attorney Dennis Herrera, and District Attorney George Gascon.  (FAC ¶¶ 128-129.)  On July 8, 2014, Plaintiff also sent an appeal to Dr. Bloom.  (FAC ¶ 130.)  On July 15, 2014, Dr. Bloom stated that the Department of Public Health would accept Plaintiff's grievance and destroy the record; Plaintiff asserts the destruction of the record violated laws regarding retention and destruction of private medical records.  (FAC ¶¶ 103, 131.)

Plaintiff asserts that he has rights against being subject to experimentation or conversion therapy. (FAC ¶¶ 74-81.) Plaintiff further alleges that he believes that coercion and conditioning tactics are being used to make him lash out at police or other authority figures. (FAC ¶ 82.) It is unclear what coercion and conditioning tactics Plaintiff is being subject to; Plaintiff may be referring to the allegedly "incessant use of SFPD vehicle's sirens near and around him," as well as Plaintiff being "the ongoing target of a large and unknown number of third party persons including informants or snitches" who are trying to entrap or victimize him. (FAC ¶¶ 83-84.)

On July 30, 2014, Defendant Sergeant Paul Weggenman and other officers responded to Plaintiff's domestic violence call. (FAC ¶ 86.) Plaintiff alleges that the responding officers showed favoritism to the aggressor and refused to follow statutory mandates and police protocol. (FAC ¶ 87.) Plaintiff also alleges that Defendant Weggenman bullied, patronized, ridiculed, and or demeaned Plaintiff. (FAC ¶ 88.) This occurred despite Plaintiff having a prior emergency restraining order, a written death threat, and a fresh head wound. (FAC ¶ 89.)

Plaintiff asserts he was then violently assaulted eight times between June 14, 2014 and November 24, 2014. (FAC ¶ 93.) This includes an attack on July 31, 2014, and an attack on September 13, 2014 which involved a two-handed chokehold. (FAC ¶ 92.) Plaintiff does not identify who attacked him. Plaintiff also asserts he was violently assaulted on September 16, 2016 and May 6, 2017 because of his sexual orientation. (FAC ¶ 94.) Plaintiff further claims that unidentified "supervisors" participated with subordinates in bait-and-switch or catch-22 tactics on June 15, 2014, July 30, 2014, and October 22, 2014; Plaintiff does not explain what those tactics involve. (FAC ¶ 95.) In response to these violent assaults, the responding officers allegedly ridiculed and demeaned Plaintiff "as if to intentionally cause him severe emotional harm or trauma." (FAC ¶ 96.)

On July 26, 2015, Defendant Weggenman and two officers allegedly "sought Plaintiff out for the arrest" because Plaintiff was sleeping on a Noe Street bench. (FAC ¶ 107.) This occurred two days after Plaintiff filed the instant action, which named Defendant Weggenman as a defendant, and after Plaintiff had made a complaint in October 2014 about Defendant Weggenman to the Office of Citizen's Complaints. (FAC ¶ 106.) It is not clear from the complaint if Plaintiff

3

was in fact arrested, although it appears there was a bench warrant. (FAC ¶ 108.)

On October 8, 2016, Plaintiff complained to San Francisco Parks and Recreation about animus-based conduct at Buena Vista Park, as well as misuse of capital improvement funds. (FAC ¶ 132.) On October 13, 2016, Plaintiff alleges he was the victim of retaliation. (FAC ¶ 133.) Plaintiff also alleges that in October 2016, he maintained a garden on Lot R, which is City-managed property. (FAC ¶¶ 134-135.) On April 6, 2017, he was locked out of Lot R. (FAC ¶ 140.)

On March 7, 2017, Plaintiff's case management binder disappeared when his locker at San Francisco State University ("SFSU") was removed. (FAC ¶¶ 104, 137.) Plaintiff complained to SFSU staff, but received no information. (FAC ¶ 138.) He then filed a Title IX complaint. (FAC ¶ 139.)

### B. Procedural Background

On July 24, 2015, Plaintiff filed the instant case and moved for leave to proceed in forma pauperis. (Dkt. No. 2.) On August 14, 2015, the Court permitted Plaintiff to proceed in forma pauperis, but dismissed the case because Plaintiff had "failed to provide 'a short and plain statement of the claim showing that the pleader is entitled to relief'," as required by Federal Rule of Civil Procedure 8(a)(2). (Dkt. No. 5 (quoting Fed. R. Civ. P. 8(a)(2)).)

On September 24, 2015, Plaintiff filed his first amended complaint. (First Amended Compl., Dkt. No. 13.) On November 6, 2015, the Court again dismissed the case for failure to comply with Rule 8(a)(2).

On December 7, 2015, Plaintiff filed his second amended complaint. (Second Amended Compl. ("SAC"), Dkt. No. 22.) On January 21, 2016, the Court again dismissed the case for failure to comply with Rule 8(a)(2), finding that "Plaintiff strings together 90 pages of rambling, repetitive, and sometimes incoherent allegations, making it difficult to discern which particular defendant engaged in the particular conduct that gives rise to any of the 34 causes of action asserted in the complaint." (Dkt. No. 26 at 1.)

On May 14, 2016, Plaintiff filed his third amended complaint. (Third Amended Compl. ("TAC"), Dkt. No. 30.) On June 16, 2016, the Court permitted service of the complaint. (Dkt.

4

No. 35.) After the complaint was served, the parties stipulated to extend the time for Defendants to respond to the complaint. (Dkt. No. 46.) On September 9, 2016, Defendants filed their answer. (Dkt. No. 50.)

On October 5, 2016, Plaintiff filed a motion to strike portions of Defendants' answer. (Dkt. No. 57.) On October 19, 2016, Defendants filed their opposition. (Dkt. No. 61.) On October 25, 2016, Plaintiff filed a reply, stating that he had realized that he needed to amend the third amended complaint. (Dkt. No. 63 at 1-2.) In light of Plaintiff's reply, the Court ordered the parties to meet and confer and determine if amended pleadings were appropriate. (Dkt. No. 65.) On December 9, 2016, the parties stipulated that Plaintiff would withdraw his motion to strike, and would file a fourth amended complaint by December 30, 2016. (Dkt. No. 68.) The parties also stipulated to an answer deadline of January 30, 2017. (*Id.*) In light of the stipulation, the Court terminated Plaintiff's motion to strike. (Dkt. No. 69.)

Plaintiff did not timely file his fourth amended complaint. Plaintiff instead filed requests for an extension of time or "updates" stating that he was unable to file his amended complaint due to stalking. (Dkt. No. 74; 77 at 2; 80 at 2; 85.) After repeatedly extending the time to file the amended complaint, the Court found that nearly four months had passed since the parties stipulated to file a fourth amended complaint. (Dkt. Nos. 75, 79, 84, 87.) Because the case was unable to progress due to Plaintiff's repeated failure to file his fourth amended complaint, the Court ordered that the third amended complaint would be deemed the operative complaint and Plaintiff would not be permitted to file a fourth amended complaint. (Dkt. No. 87 at 2.)

On May 23, 2017, the Court held a case management conference, during which the parties agreed to allow Plaintiff to file a fourth amended complaint. (Dkt. No. 99.) On June 18, 2017, Plaintiff filed the instant complaint against Defendants City and County of San Francisco ("City") and Weggenman, asserting nine causes of action: (1) 42 U.S.C. § 1983 custom or usage claim (the City); (2) 42 U.S.C. § 1983 substantive due process claim (City); (3) 42 U.S.C. § 1983 procedural due process claim (City); (4) 42 U.S.C. § 1983 equal protection claim (all Defendants); (5) 42 U.S.C. § 1983 and § 2000bb First Amendment Claim (City); (6) 42 U.S.C. § 1983 deliberate indifference - ratification claim (City); (7) 42 U.S.C. § 1983 deliberate indifference - failure to

1   train claim (City); (8) 42 U.S.C. § 1983 *Monell* supervisory negligence claim (all Defendants); and (9) 42 U.S.C. § 1983 outrage and intentional emotional distress claim (all Defendants). (FAC ¶¶ 148-236.)

On August 4, 2017, Defendants filed the instant motion to dismiss. On August 22, 2017, Plaintiff filed a late opposition to Defendants' motion to dismiss. (Plf.'s Opp'n, Dkt. No. 109.) On August 29, 2017, Defendants filed their reply brief. (Defs.' Reply, Dkt. No. 113.)

## II. LEGAL STANDARD

### A. Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III. DISCUSSION

#### A. Request for Judicial Notice

In his opposition, Plaintiff asks that the Court take judicial notice of: (1) a USLegalForms.com link regarding "coercion"; (2) the U.S. Department of Justice Assessment of the San Francisco Police Department (October 2016); (3) a SF Weekly article, "Cover of Darkness: S.F. Police Turned a Blind Eye to Some of the City's Most Dangerous Criminals" (May 8, 2013); (4) a SF Weekly article, "The Snitch" (February 7, 2014); (5) a SFist.com article, "Police Union Vows to 'Go After' San Francisco District Attorney" (April 7, 2015); (6) a SF Examiner article "Police Union Strong-Arms Board of Supervisors" (February 15, 2014); (7) Report of the Blue Ribbon Panel on Transportation, Accountability and Fairness in Law; (8) a SF Gate article, "Christian Teens Flock to BattleCry"; (9) a Trulia link regarding 120 Harford Street (August 2013); (10) a New York Times article, "Mike Pence and Conversion Therapy, a History" (November 30, 2016); and (11) Police Commission Resolution 115988. (Plf.'s Opp'n at 7.)

Plaintiff did not attach any of the documents he requests judicial notice of in his opposition brief.[1]

The Court denies judicial notice of the USLegalForms.com link (Document 1). The Court cannot access the link; the link leads to the USLegalForms.com homepage.[2] Thus, the Court cannot determine if the webpage contains judicially noticeable information. Likewise, the Court denies judicial notice of Police Commission Resolution 115988 (Document 11) because the Court was not able to find this resolution. Further, with both documents, Plaintiff does not supply the Court with any information to determine whether the facts contained on this link are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court also denies judicial notice of the various articles (Documents 3-6, 8, 10). While courts have taken judicial notice of newspaper articles, it is typically "limited to a narrow set of circumstances not at issue here -- e.g., in securities cases for the purpose of showing that particular information was available to the stock market." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1028 (C.D. Cal. 2015). "This is because often, the accuracy of information in newspaper articles and press releases cannot be readily determined and/or can be reasonably questioned." *Id.* Here, it appears Plaintiff seeks judicial notice of the contents of the articles for their truth, which would be inappropriate.

The Court denies judicial notice of the Trulia link (Document 9). Plaintiff does not supply the Court with any information to determine whether the facts contained on this link are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Finally, the Court may take judicial notice of the U.S. Department of Justice's Assessment of the San Francisco Police Department (Document 2) and the Report of the Blue Ribbon Panel on

---

[1] On September 20, 2017, nearly a month after Plaintiff filed his opposition, Plaintiff filed a declaration which included web links to the various exhibits he sought judicial notice of. (Dkt. No. 119.) Despite not being timely and only providing web links, the Court has reviewed the declaration, and finds that it does not affect the Court's conclusions. The remainder of Plaintiff's declaration concerns actions by administrators of SFSU, which are not relevant to the instant action as SFSU is not a party to this action.

[2] Plaintiff's link in the September 20, 2017 declaration leads to an error page.

8

1  Transportation, Accountability, and Fairness in Law (Document 7) because both are official
2  government reports available on official websites. *See Rose v. Stephens Inst.*, Case No. 09-cv-
3  5966-PJH, 2016 WL 5076214, at *4 (N.D. Cal. Sept. 20, 2016) (taking judicial notice of "official
4  government reports available on official websites"); *Cty. of Santa Clara v. Astra USA, Inc.*, 257
5  F.R.D. 207, 208 n.3 (N.D. Cal. 2008) (taking judicial notice of "public government documents").

Plaintiff also filed a second request for judicial notice of: (1) a letter from SFSU Dean, dated August 10, 2017; and (2) a letter from Plaintiff, dated August 23, 2017. (Request for Judicial Notice ("RJN"), Dkt. No. 109.) Neither letter involves information "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As such, the Court denies the request.

**B. Motion to Dismiss**

**i. Timeliness of Motion**

In his opposition, Plaintiff primarily argues that Defendants are not permitted to file a motion to dismiss because the parties agreed to have Plaintiff withdraw his motion to strike portions of Defendants' answer and to file a fourth amended complaint, and on an answer deadline. (Plf.'s Opp'n at 3.) The Court disagrees that this agreement prohibits Defendants from filing a motion to dismiss. Moreover, the agreement is no longer in effect, as Plaintiff never filed his fourth amended complaint in accordance with this agreement. Instead, due to Plaintiff's repeated failure to file a fourth amended complaint, the Court ultimately found that the third amended complaint would be the operative complaint. (Dkt. No. 87.) It was only after the parties agreed, at the initial case management conference, to allow Plaintiff to file his fourth amended complaint, that he did so. At that point, the parties did not agree that Defendants would only be permitted to file an answer, rather than a motion to dismiss.

To the extent Plaintiff argues that he is being deprived of a determination on his motion to strike the affirmative defenses, Plaintiff is incorrect. (Plf.'s Opp'n at 5.) Once Plaintiff filed a fourth amended complaint, his new complaint superseded the third amended complaint. *Sanchez v. Oceanside Investments, Inc.*, No. 15-cv-3453-MEJ, 2015 WL 6177460, at *1 (N.D. Cal. Oct. 21, 2015). As the third amended complaint was no longer operative, Defendants' answer to the

9

1    third amended complaint was also not operative. Thus, the motion to strike Defendants' answer to
2    the third amended complaint was moot.
3        Finally, Plaintiff seems to argue that Defendants failed to raise their defenses at the first
4    available opportunity because they first filed an answer in September 2016. (Plf.'s Opp'n at 6.)
5    Again, the Court disagrees. Plaintiff concedes that Defendants raised an affirmative defense that
6    Plaintiff's complaint failed to state a claim in their answer. (*Id.*) Further, while the motion to
7    dismiss was not filed until August 2017, this was not due to Defendants delaying the case, but to
8    Plaintiff's repeated failure to timely file a fourth amended complaint until nearly six months after
9    the parties' original agreed deadline of December 30, 2016.
10       For these reasons, the Court finds that Defendants' motion to dismiss is proper and will
11   consider the motion on the merits.

### ii. Failure to State a Claim

#### a. 42 U.S.C. § 1983 "Custom or Usage" Claim

In his first cause of action, Plaintiff appears to be bringing a *Monell* claim. A plaintiff suing a municipality under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs of Bryan Cty, Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Following the Supreme Court's decisions in *Twombly* and *Iqbal*, courts in this circuit now require that a plaintiff plead facts showing a plausible claim for municipal liability. *See AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp. 2d 890, 898-99 (N.D. Cal. 2013) ("the Ninth Circuit has recognized that, under the Supreme Court's recent pleading jurisprudence, it is no longer clear that, without more, an allegation that an officer's conduct 'conformed to official policy, custom, or practice' continues to be sufficient to state a claim under *Monell*") (internal citations omitted); *Mirabel v. Smith*, No. C 12-3075 SI, 2012 WL 5425407, at *2 (N.D. Cal. Nov. 6, 2012) ("It is not enough to allege simply that a policy, custom, or practice exists that caused the constitutional violations").

Here, Plaintiff has failed to allege sufficient facts to establish *Monell* liability. Plaintiff asserts that Defendants had "institutionalized" bias, prejudice, or homophobia with a custom or

usage; that this usage was longstanding, widespread, or well-settled; and that Defendants acted as if according to standard operating procedures. (FAC ¶ 153.) Plaintiff further alleges that this speaks of an illegitimate custom or usage with a purpose of disapproving of Plaintiff's sexual orientation. (FAC ¶ 154.) These are conclusory allegations that do not identify an actual custom or usage, or provide adequate facts that such a custom or usage exists. While Plaintiff alleges multiple actions by a variety of actors -- including unidentified third-parties -- he does not adequately allege facts to show that these acts were pursuant to a custom or usage, or that they are even related.

Plaintiff's opposition does not identify a custom or practice. Instead, Plaintiff's opposition focuses on the existence of a conspiracy.[3] (Plf.'s Opp'n at 9-12.) Because Plaintiff has failed to identify a custom or usage, or allege adequate facts in support of a custom or usage, Plaintiff's first cause of action is DISMISSED. Further, while pro se pleadings must be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this is Plaintiff's fifth attempt to plead adequate claims. The Court therefore finds that dismissal with prejudice is warranted.

### b. 42 U.S.C. § 1983 "Substantive Due Process" Claim

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). To constitute "arbitrary"

---

[3] Plaintiff appears to request that that the Court sua sponte consider a conspiracy claim. (Plf.'s Opp'n at 13.) No such claim was pled in the operative complaint, which again, is Plaintiff's fifth attempt to plead adequate claims. Plaintiff's request is inappropriate; Plaintiff had an opportunity to plead a conspiracy cause of action, which he did not do. In any case, it does not appear Plaintiff has adequately alleged a conspiracy claim. "Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 881 (N.D. Ca. 2010). Conclusory statements about an agreement or operation of a conspiracy are insufficient. *See id.* (rejecting conspiracy claim where the plaintiff alleged that defendants "knowingly and willfully conspired to conceal the fact that her loan would be securitized and, more broadly, to provide plaintiff with a loan she could not afford"); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1157 (N.D. Cal. 2013) (rejecting conspiracy claim where the plaintiffs "general[ly] alleg[ed] that Defendants conspired together to enter a fraudulent sales scheme, the purpose of which was to inflate the appraisal process and to enter into an unfair loan so as to extract 'undisclosed compensation' from Plaintiffs" because there were "no specific factual allegation[s] to support the conclusory allegation that Defendants entered into a conspiracy"). Plaintiff's conclusory allegations that Defendants were engaged in a conspiracy with a large and unknown number of third parties to entrap him are insufficient to support a conspiracy claim. (FAC ¶ 84.)

deprivation, the courts require an abuse of power so egregious that it "shocks the conscience." *Id.* (internal quotation omitted). "Such conduct can be shown by conduct intended to injure in some way unjustifiable by any government interest." *Id.* (internal quotation omitted).

Here, Plaintiff fails to adequately allege a substantive due process claim. Plaintiff fails to allege factual allegations that the City has deprived him of life, liberty, or property. Instead, Plaintiff states generally that he was deprived of "Constitutional liberties, privileges or immunities" without identifying the specific deprivations. (FAC ¶ 153.) The only specific loss Plaintiff identifies is that he was prevented from completing a program at SFSU. (FAC ¶ 162.) Even assuming this is a sufficient interest to support a substantive due process claim, Plaintiff does not explain what actions taken by Defendants prevented him from completing the program, and why those actions prevented him from completing the program. Instead, Plaintiff alleges that "[t]his is also believed a matter of outrage and conduct shocking to the conscious . . . ." (FAC ¶ 157.) Such conclusory allegations are inadequate to put Defendants on notice of what actions specifically have deprived Plaintiff of his interest in completing a program at SFSU. Further, because Plaintiff's claim is against the City, Plaintiff must satisfy the requirements of *Monell* by pleading factual allegations that the actions taken were pursuant to a custom or policy, or ratified by a government official with final policymaking authority. Plaintiff has made no such allegations, and thus Plaintiff's second cause of action is DISMISSED. Again, because this is the fifth iteration of Plaintiff's complaint, the dismissal is with prejudice.

c. 42 U.S.C. § 1983 "Procedural Due Process" Claim

"To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Gutay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011).

Here, Plaintiff's procedural due process claim appears to be based on the allegedly falsified medical records. (FAC ¶ 169.) It is not clear, however, that the existence of falsified medical records affects a liberty or property interest that is protected by the Constitution. Even if it was, Plaintiff's allegations contradict that there was a deprivation of that interest because Plaintiff

12

1 alleges that the records were destroyed on his request. (FAC ¶ 131.) Further, the destruction of
2 the records was the result of Plaintiff undergoing a process, which included Plaintiff filing a
3 complaint, an investigation of that complaint, Plaintiff filing an appeal, and the appeal being
4 accepted. (FAC ¶¶ 123-131.) Thus, based on Plaintiff's allegations, Plaintiff has not adequately
5 alleged facts that would satisfy any of the three elements required for a procedural due process
6 claim.

7   Plaintiff also asserts various disparate actions, including making complaints about animus-
8 based conduct at Buena Vista Park. (FAC ¶ 132.) Plaintiff does not identify what that conduct
9 was and how it related to or deprived him of a liberty or property interest. Plaintiff also does not
10 explain what process he failed to receive. Similarly, Plaintiff complains that he was locked out of
11 a City-managed public property, where he was maintaining a garden. (FAC ¶¶ 134-35, 140.)
12 Plaintiff alleges no facts that he was permitted to have a garden on City property, thus failing to
13 establish that he had a liberty or property interest. Finally, Plaintiff asserts that his locker at SFSU
14 was removed, and that his complaints were never addressed. (FAC ¶¶ 137-38.) SFSU is part of
15 the California State University system, and Plaintiff does not allege that these actions were taken
16 by employees of the City. Thus, there is no showing that Defendants in the instant case were
17 responsible for the removal of the locker. Plaintiff also alleges that he complained of being
18 stalked in San Jose and Berkeley, but again, this would involve individuals outside of the City, as
19 San Jose and Berkeley are distinct municipalities. (FAC ¶¶ 141-142.) Finally, Plaintiff alleges
20 that he was stalked at the San Francisco Public Library, but makes no factual allegations that the
21 City was responsible or that the City failed to provide him with adequate due process. (FAC ¶
22 143.)

23   Because Plaintiff fails to adequately plead a procedural due process claim, Plaintiff's third
24 cause of action is DISMISSED. Again, because this is the fifth iteration of Plaintiff's complaint,
25 the dismissal is with prejudice.

26                    d.  42 U.S.C. § 1983 "Equal Protection" Claim
27   A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or
28 other suspect classification must plead intentional unlawful discrimination or allege facts that are

at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because of the plaintiff's membership in a protected class. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013).

Plaintiff does not adequately allege an equal protection claim. First, Plaintiff does not identify a comparison group, specifically other individuals who are similarly situated to Plaintiff but who were treated differently. *See Boyd v. Santa Cruz Cty.*, Case No. 15-cv-405-BLF, 2016 WL 3092101, at *4 (N.D. Cal. June 2, 2016) (dismissing equal protection claim because the plaintiff did not identify a similarly situated group for purposes of an equal protection analysis). While Plaintiff appears to be alleging that he was discriminated against because of his sexual orientation, he has not pled facts to suggest that other individuals who are not openly gay would be similarly situated to him. (FAC ¶¶ 19, 180.) Second, Plaintiff does not adequately allege that the actions taken against him were the result of discriminatory intent. Plaintiff's conclusory allegations that Defendants were acting because of homophobia are insufficient to demonstrate discriminatory intent. The fact that Plaintiff suffered certain actions and that he is of a particular sexual orientation does not automatically mean that he suffered those actions *because* of his sexual orientation. *See Le v. Dep't of Parking & Traffic of SF*, No. C 04-3432-CRB, 2005 U.S. Dist. LEXIS 1224, at *9 (N.D. Cal. Jan. 24, 2005) (dismissing equal protection claim where the plaintiff "only made 'conclusory allegations' of discrimination, without pointing to any specific actions of the City that might prove such an intent"). Indeed, there are no allegations in the complaint that Defendants knew of Plaintiff's sexual orientation, let alone factual allegations showing that their actions against Plaintiff were because of Plaintiff's sexual orientation.

Because Plaintiff fails to adequately plead an equal protection claim, Plaintiff's fourth cause of action is DISMISSED. Again, because this is the fifth iteration of Plaintiff's complaint, the dismissal is with prejudice.

### e. 42 U.S.C. § 1983 and § 2000bb "First Amendment" Claim

Plaintiff brings a First Amendment claim based on Plaintiff being forced to profess belief in evangelical doctrine, being punished for not believing, being punished for practicing his

religious beliefs, being forced into practicing religious beliefs not his own, and being forced to engage in conversion therapy. (FAC ¶ 189.) These are conclusory allegations, Plaintiff does not identify specific instances of these events or when these events took place. Plaintiff also does not allege facts that would show that Defendants were involved in these events. Rather, Plaintiff seems to allege that these actions were caused by religiously malicious third parties. (FAC ¶¶ 77, 84.) Plaintiff does not point to specific facts which show that Defendants had any responsibility for these third parties or were otherwise involved in these unidentified actions, and his conclusory statements that it may be related to City officials is inadequate. Therefore, Plaintiff's fifth cause of action is DISMISSED. Because this is the fourth amended complaint, the dismissal is with prejudice.

      f. 42 U.S.C. § 1983 "Deliberate Indifference-Ratification" Claim

  Like Plaintiff's "custom or usage" claim, Plaintiff's sixth cause of action appears to be raising a *Monell* claim. In addition to demonstrating there is a custom or usage, a local government can be held liable where "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (internal quotation omitted). "There must, however, be evidence of a conscious, affirmative choice on the part of the authorized policymaker." *Id.* (internal quotation omitted). Thus, a local government can only be held liable under this theory "where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* (internal quotation omitted).

  Plaintiff fails to adequately allege *Monell* liability under a deliberate indifference or ratification theory. The only conduct Plaintiff identifies is Department of Public Health Director Barbara Garcia's alleged ratification of misconduct when she "made a choice of two alternative [sic]." (FAC ¶ 199.) Plaintiff does not specify what this misconduct is and why it is unconstitutional, and more importantly, makes no factual allegations regarding any specific action taken by Director Garcia, which would create a reasonable inference that she reviewed or

15

approved of any of the alleged unconstitutional conduct. Therefore, Plaintiff's sixth cause of action is DISMISSED with prejudice, as this is Plaintiff's fourth amended complaint.

                g.    42 U.S.C. § 1983 "Failure to Train" Claim

Again, Plaintiff's seventh cause of action appears to be raising a *Monell* claim. A municipality can be held liable "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To state a claim for failure to train, Plaintiff must allege facts sufficient to show that the City "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights." *Flores v. Cty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (internal quotation omitted). This can usually be demonstrated through a pattern of similar constitutional violations by untrained employees. *Id.*

Plaintiff fails to adequately allege a failure to train claim. Plaintiff alleges that former SFPD Chief Gregory Suhr had constructive knowledge of institutionalized bias, prejudice, or homophobia, as well as "the propensity for subordinate officers to conduct themselves as alleged," but failed to follow through with public statements regarding training and oversight. (FAC ¶ 210.) Plaintiff does not explain how Chief Suhr would have constructive knowledge or what those statements are, and also fails to allege any facts about the lack of training. Such conclusory allegations are inadequate to state a claim for failure to train. *Compare with Slusher v. City of Napa*, Case No: C 15-2394 SBA, 2015 WL 8527411, at *8 (N.D. Cal. Dec. 11, 2015) (dismissing failure to train claim where the plaintiff alleged that Defendants "failed to properly hire, train, instruct, monitor, supervise, evaluate, and discipline Defendants, with deliberate indifference to Plaintiffs' constitutional rights"); *Smith v. Harrington*, No. C 12-3533 LB, 2013 WL 1196892, at *7 (N.D. Cal. Mar. 25, 2013) (dismissing failure to train claim where the plaintiff made conclusory allegation that Defendants failed to train and monitor employees about the appropriate use of their power to make child abuse reports). Plaintiff's seventh cause of action is DISMISSED with prejudice, as this is Plaintiff's fifth iteration of his complaint.

                h.    42 U.S.C. § 1983 *Monell* "Supervisory Negligence" Claim

A defendant can be held liable as a supervisor if the defendant is personally involved in the constitutional deprivation, or there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Plaintiff's supervisory negligence claim fails. Plaintiff alleges that Defendant Weggenman ordered Plaintiff arrested on July 26, 2015, which caused Plaintiff to be deprived of his equal protection rights, right to petition against retaliation, and due process rights. (FAC ¶¶ 222-223.) Plaintiff does not explain if he was, in fact, arrested, why the arrest was improper, or how the order of arrest resulted in constitutional violations. In fact, Plaintiff appears to allege that there was a bench warrant out for him, which would suggest that the arrest was proper. (FAC ¶ 108.) Further, to the extent Plaintiff alleges that this arrest was in retaliation for a complaint he made against Defendant Weggenman on October 22, 2014 or the filing of the instant action, Plaintiff alleges no facts to suggest Defendant Weggenman was aware of either the complaint or the filing of the instant action. (*See* FAC ¶ 106.) Absent knowledge, Defendant Weggenman could not have been retaliating on the basis of such complaints. Finally, if Plaintiff is alleging that the stalking events and assaults were being caused by Defendants, he alleges no facts to suggest that either Defendant had any responsibility for those acts or condoned them, or had any supervisory power over the individuals who commit those acts. Therefore, Plaintiff's eighth cause of action is DISMISSED. Because this is Plaintiff's fourth amended complaint, the dismissal is with prejudice.

i. Intentional Infliction of Emotional Distress Claim

To assert a tort of intentional infliction of emotional distress ("IIED"), a plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. *KOVR-TV, Inc. v. Superior Court*, 31 Cal. App. 4th 1023, 1028 (1995).

Plaintiff fails to adequately plead his IIED claim. Plaintiff does not identify specific

17

1  conduct by Defendants that are sufficiently extreme and outrageous to support an IIED claim.

2  Instead, Plaintiff makes general allegations that Defendants were "abusing positions of power,"

3  "piling on emotional harm i[n] a systematic way," and "repeating harmful conduct" such as

4  "violent assaults." (FAC ¶ 231.) Again, these are conclusory statements. Further, to the extent

5  Plaintiff's claims are based on the violent assaults, Plaintiff did not allege that those assaults were

6  perpetuated by Defendants; indeed, many of the actions identified by Plaintiff appear to be

7  attributed to third-parties. (FAC ¶¶ 26, 92-94.) As discussed above, Plaintiff has not adequately

8  pled facts to show that Defendants were responsible for those actions.[4]

9  Because Plaintiff fails to adequately plead an IIED claim, Plaintiff's ninth cause of action is

10  dismissed. Again, the dismissal is with prejudice, as this is Plaintiff's fourth amended complaint.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's fourth amended complaint is DISMISSED WITH PREJUDICE.[5]

IT IS SO ORDERED.

Dated: October 5, 2017

*Kandis Westmore*

KANDIS A. WESTMORE
United States Magistrate Judge

---

[4] Additionally, it is not clear that Plaintiff has presented his IIED claims as required by the California Tort Claims Act ("CTCA") or that he was excused from complying with the Act's claims presentation requirements. All claims for money or damages against local public entities must be filed in accordance with the CTCA. Cal. Gov. Code § 905. The CTCA provides that a party cannot file an action for money or damages against a local public agency until a written claim has first been filed with and adjudicated by the defendant agency. Cal. Gov. Code §§ 945.4, 950.2. This claims presentation requirement is a condition precedent to maintaining an action against a local public entity, and failure to allege facts demonstrating or excusing compliance with the CTCA's claims presentation requirements warrants dismissal of a cause of action. *California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1237-38 (2004).

[5] On October 4 and 5, 2017, Plaintiff filed an additional declaration without permission from the Court. (Dkt. Nos. 121, 122.) Nevertheless, the Court has reviewed the declaration and exhibits, and finds that it does not alter the Court's conclusions.

18